UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
------------------------------x
                              :
GEOFFREY S. BERG              :
                              :
v.                            : CIV. NO. 3:14CV01042(SALM)
                              :
CAROLYN W. COLVIN, ACTING     :
COMMISSIONER, SOCIAL SECURITY :
ADMINISTRATION                :  January 5, 2016
                              :
------------------------------x
```

<u>**RULING ON CROSS MOTIONS**</u>

Plaintiff Geoffrey S. Berg brings this action pursuant to 42 U.S.C. §405(g), seeking review of a final decision of the Commissioner of Social Security denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §401 <u>et seq</u> ("the Act"). Plaintiff has moved to remand the case for a rehearing. The Commissioner has moved to affirm.

For the reasons set forth below, plaintiff's Motion to Remand [**Doc. #15**] is **GRANTED**. Defendant's Motion for an Order Affirming the Decision of the Commissioner [**Doc. #18**] is **DENIED**.

## I.   ADMINISTRATIVE PROCEEDINGS

The procedural history of this case is not disputed. Plaintiff filed an application for DIB on October 4, 2010,

alleging disability as of November 1, 2007.[1] [Certified Transcript of the Record, Compiled on November 3, 2014, (hereinafter "Tr.") 177]. His DIB claim was denied initially on July 7, 2011, and upon reconsideration on October 17, 2011. Id. Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ") on December 14, 2011. Id.

On October 3, 2012, Administrative Law Judge Deidre R. Horton held a hearing at which plaintiff appeared with counsel and testified. [Tr. 200-24] On November 29, 2012, the ALJ found that plaintiff was not disabled, and denied his claim. [Tr. 177-85] Plaintiff filed a timely request for review of the hearing decision on January 3, 2013. [Tr. 171-172] On May 19, 2014, the Appeals Council denied review, thereby rendering ALJ Horton's decision the final decision of the Commissioner. [Tr. 1-7] The case is now ripe for review under 42 U.S.C. §405(g).

Plaintiff, represented by counsel, timely filed this action for review and moves to remand for a new hearing.

## II.   STANDARD OF REVIEW

The review of a Social Security disability determination involves two levels of inquiry. First, the Court must decide whether the Commissioner applied the correct legal principles in making the determination. Second, the Court must decide whether

---

[1] Plaintiff's last date insured is December 30, 2013. [Tr. 177]

the determination is supported by substantial evidence. Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998) (citation omitted). Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion; it is more than a "mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The reviewing court's responsibility is to ensure that a claim has been fairly evaluated by the ALJ. Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983) (citation omitted).

The Court does not reach the second stage of review – evaluating whether substantial evidence supports the ALJ's conclusion – if the Court determines that the ALJ failed to apply the law correctly. See Norman v. Astrue, 912 F. Supp. 2d 33, 70 (S.D.N.Y. 2012) ("The Court first reviews the Commissioner's decision for compliance with the correct legal standards; only then does it determine whether the Commissioner's conclusions were supported by substantial evidence."). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made

according to the correct legal principles." Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).

"[T]he crucial factors in any determination must be set forth with sufficient specificity to enable [a reviewing court] to decide whether the determination is supported by substantial evidence." Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984) (alteration added)(citation omitted). The ALJ is free to accept or reject the testimony of any witness, but a "finding that the witness is not credible must nevertheless be set forth with sufficient specificity to permit intelligible plenary review of the record." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 260-61 (2d Cir. 1988) (citation omitted). "Moreover, when a finding is potentially dispositive on the issue of disability, there must be enough discussion to enable a reviewing court to determine whether substantial evidence exists to support that finding." Johnston v. Colvin, Civ. No. 3:13CV00073(JCH), 2014 WL 1304715, at *6 (D. Conn. Mar. 31, 2014) (internal citations omitted).

It is important to note that in reviewing the ALJ's decision, this Court's role is not to start from scratch. "In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct

legal standard." Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012) (citations and internal quotation marks omitted). "[W]hether there is substantial evidence supporting the appellant's view is not the question here; rather, we must decide whether substantial evidence supports the ALJ's decision." Bonet ex rel. T.B. v. Colvin, 523 F. App'x 58, 59 (2d Cir. 2013)(citations omitted).

**III.   SSA LEGAL STANDARD**

Under the Social Security Act, every individual who is under a disability is entitled to disability insurance benefits. 42 U.S.C. §423(a)(1).

To be considered disabled under the Act and therefore entitled to benefits, Mr. Berg must demonstrate that he is unable to work after a date specified "by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Such impairment or impairments must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §423(d)(2)(A)(alterations added); see also 20 C.F.R.

§404.1520(c)(requiring that the impairment "significantly limit [ ] ... physical or mental ability to do basic work activities" to be considered "severe").

There is a familiar five-step analysis used to determine if a person is disabled. See 20 C.F.R. §404.1520(a)(4). In the Second Circuit, the test is described as follows:

> First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam). If and only if the claimant does not have a listed impairment, the Commissioner engages in the fourth and fifth steps:

> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of proof as to the first four steps, while the Secretary must prove the final one.

Id.

"Through the fourth step, the claimant carries the burdens of production and persuasion, but if the analysis proceeds to the fifth step, there is a limited shift in the burden of proof and the Commissioner is obligated to demonstrate that jobs exist in the national or local economies that the claimant can perform given his residual functional capacity." Gonzalez ex rel. Guzman v. Dep't of Health and Human Serv., 360 F. App'x 240, 243 (2d Cir. 2010) (citing 68 Fed. Reg. 51155 (Aug. 26, 2003)); Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam)). "Residual functional capacity" is what a person is still capable of doing despite limitations resulting from her physical and mental impairments. See 20 C.F.R. §§404.1545(a), 416.945(a)(1).

"In assessing disability, factors to be considered are (1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." Bastien v. Califano, 572 F.2d 908, 912 (2d Cir. 1978) (citation omitted). "[E]ligibility for benefits is to be determined in light of the fact that the Social Security Act is a remedial statute to be broadly construed and liberally applied." Id. (citation and internal quotation marks omitted).

## IV.   THE ALJ'S DECISION

Following the above-described five step evaluation process, ALJ Horton concluded that plaintiff was not disabled under the Act. [Tr. 177-85] At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since November 1, 2007, the alleged onset date. [Tr. 179] At step two, the ALJ found that plaintiff had the severe impairment of major depressive disorder, recurrent. Id. The ALJ found that the plaintiff's asserted impairments of high blood pressure and high cholesterol did not cause any significant physical limitations and were not "severe."

At step three, the ALJ found that plaintiff's impairments, either alone or in combination, did not meet or medically equal the severity of any of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. [Tr. 180-81] The ALJ specifically considered Listing 12.04 (affective disorders). [Tr. 180] The ALJ also conducted a psychiatric review technique and found that plaintiff had mild restrictions in his activities of daily living, mild difficulties in social functioning, and moderate difficulties in concentration, persistence or pace. He found that the plaintiff had experienced one episode of decompensation of extended duration. [Tr. 180-81] Before moving onto step four, the ALJ found plaintiff had the RFC to

8

perform a full range of work at all exertional levels
but with the following nonexertional limitations: The
claimant is able to engage in simple routine tasks and
occasionally more complex tasks; he can relate
appropriately to others; and he can adapt to ordinary
changes in the workplace.

[Tr. 181] At step four, the ALJ found plaintiff was unable to

perform his past relevant work. [Tr. 184] At step five, after

considering plaintiff's age, education, work experience and RFC,

the ALJ found that jobs existed in significant numbers in the

national economy that plaintiff could perform. [Tr. 184]

## V.  DISCUSSION

On appeal, plaintiff asserts the following arguments in
favor of remand:

1. The ALJ erred in her application of the treating
   physican rule, as to plaintiff's treating psychiatrist
   Dr. Brett Blatter;

2. The ALJ erred when she failed to indicate the weight
   assigned to the Agency's psychological consultant's
   assessments; and

3. The ALJ's failure to call a vocational expert was
   error.

For the reasons set forth below, the Court finds that the

ALJ erred in her application of the treating physician rule to

Dr. Blatter's opinion.

9

Plaintiff argues that the ALJ erred by failing to afford "controlling weight" to the opinion of treating physician Dr. Brett Blatter pursuant to 20 C.F.R. §404.1527(c)(1)-(6). Pursuant to 20 C.F.R. §404.1527(c)(2), a treating source's opinion will usually be given more weight than a non-treating source. See Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008). "The SSA recognizes a rule of deference to the medical views of a physician who is engaged in the primary treatment of a claimant." Greek v. Colvin, 802 F.3d 370, 375 (2d Cir. 2015) (per curiam). "A treating physician's statement that the claimant is disabled cannot itself be determinative." Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999). However, "the opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" Burgess, 537 F.3d at 128 (quoting 20 C.F.R. §404.1527[(c)](2)).

If the treating physician's opinion is not supported by objective medical evidence based on "medically acceptable" techniques, or is inconsistent with other substantial evidence in the record, the ALJ need not give the opinion significant weight. See Poupore, 566 F.3d at 307. "Medically acceptable ...

10

means that the clinical and laboratory diagnostic techniques that the medical source uses are in accordance with the medical standards that are generally accepted within the medical community as the appropriate techniques to establish the existence and severity of an impairment." Social Security Ruling ("SSR") 96-2P, 1996 WL 374188, at *3 (S.S.A. July 2, 1996). The opinion does not need to be consistent with all other evidence, but rather there must not be "other substantial evidence in the case record that contradicts or conflicts with the opinion." Id.

If the treating source's opinion is not given controlling weight, the ALJ considers the following factors when deciding how much weight to give the opinion: length of treatment relationship, frequency of examination, nature and extent of the treatment relationship, relevant evidence used to support the opinion, consistency of the opinion with the entire record, and the expertise and specialized knowledge of the source. See 20 C.F.R. §404.1527(c)(2)-(6); SSR 96-2P, 1996 WL 374188, at *2; see also Selian v. Astrue, 708 F.3d 409, 418 (2d Cir. 2013) (per curiam) (setting forth the factors an ALJ must consider when evaluating opinion evidence). After considering these factors, the ALJ must "give good reasons" for the weight he affords to the treating source's opinion. Burgess, 537 F.3d at 129-30 (citations omitted). "Failure to provide such 'good reasons' for

not crediting the opinion of a claimant's treating physician is a ground for remand." Id. (quoting Snell, 177 F.3d at 133 (internal quotation marks omitted)).

Dr. Blatter, who submitted three medical opinions in this case, began treating plaintiff in April 2007 shortly after plaintiff attempted suicide and was discharged from an inpatient psychiatric facility. [Tr. 521-24; 1077-80; 1330-34]

Dr. Blatter issued an opinion dated December 3, 2010, concerning plaintiff's functional limitations. [Tr. 521-34] Dr. Blatter reported that he treated plaintiff beginning in April 2007 on a weekly basis, with their last appointment occurring on November 29, 2010. [Tr. 521] On that occasion the doctor noted "slight improvement" with an Axis I diagnosis of Major Depression, recurrent, severe with no psychotic features, 296.33, and Generalized Anxiety Disorder, 300.02.[2] [Tr. 521] With respect to plaintiff's psychiatric history, Dr. Blatter stated that plaintiff suffered from "long standing depression and anxiety with a high lethality suicide attempt in 2007 followed by a lengthy hospitalization. Remains depressed and anxious since then although not as bad as in 2007." [Tr. 521] With regard to current mental status, the doctor noted that

---

[2] Medications included: Tofranil, Remeron, Risperdal, Klonopin, and Valium. [Tr. 521]

plaintiff's appearance was "unkempt at times;" his cognitive status was oriented 3/3, memory intact, attention and concentration was good; speech was at a normal rate and volume and thought process was linear and goal-directed; no delusions or hallucinations were noted but there was "prominent negative rumination about self and future" and intermittent "suicidal thoughts;" depressed mood and dysphoric affect was noted, "tearful at times, but reactive;" judgment and insight were good. [Tr. 521-22] With respect to activities of daily living, Dr. Blatter opined that plaintiff had: a "very serious problem" using appropriate coping skills to meet ordinary demands of a work environment and handling frustration; a "slight problem" taking care of personal hygiene; and "no problem" caring for physical needs or using good judgment regarding safety and dangerous circumstances. [Tr. 522] The doctor stated that plaintiff was "not presently working. Has not worked since suicide attempt in 2007." [Tr. 522] Dr. Blatter opined that plaintiff had "no problem" with social interaction. [Tr. 524] With respect to task performance, Dr. Blatter opined that plaintiff had: a "very serious problem" performing work activity on a sustained basis; and "no problem" carrying out single-step or multi-step instructions, focusing long enough to finish assigned simple activities or tasks, changing from one simple

task to another, performing basic work activities at a
reasonable pace/finishing on time. [Tr. 524] Dr. Blatter added:
"The demands of a work environment (pressure to accomplish
tasks, relationship with supervisor, etc.) are likely to present
a serious challenge and would exacerbate depression." [Tr. 524]

In a second opinion dated June 29, 2011, Dr. Blatter
indicated that he continued weekly therapy with plaintiff, with
a most recent appointment on June 27, 2011. [Tr. 1077-80] Dr.
Blatter noted no change in diagnoses, stating: "Remains
depressed and anxious. Unchanged since last report despite
ongoing attempts to find medication regimen that will result in
further improvement."[3] [Tr. 1077] The doctor noted no changes in
plaintiff's mental status, activities of daily living, social
interactions, or task performance since the last report. [Tr.
1077-79] The doctor opined that the "[d]emands of a work
environment would still present a serious challenge and would
exacerbate his depression and anxiety." [Tr. 1079]

> Note - My area of expertise is in mood disorders. I am
> asst. clinical professor of psychiatry at Columbia
> University. I have seen numerous cases of difficult to
> treat depression in my career. Geoffrey's depression
> has been one of the most difficult to treat and has
> not responded well to numerous trials of different

---

[3] Medications included: Zoloft, Wellbutrin, Ritalin, Klonopin and
Anafranil. [Tr. 1077]

antidepressant medications. I do not believe he is
capable of working as a result of the depression.
[Tr. 1080]

The third opinion provided by Dr. Blatter was in the form
of a Mental Residual Functional Capacity Questionnaire completed
on September 24, 2012. [Tr. 1330-34] He indicated that he
continued weekly therapy with plaintiff since April 2007. [Tr.
1330] The doctor opined that plaintiff had an Axis I diagnosis
of Major Depression, recurrent, severe with no psychotic
features (296.33); Generalized Anxiety Disorder (300.02); and
Panic Disorder (300.01). [Tr. 1330] The doctor identified an
Axis IV diagnosis of "chronic mental illness, unemployment,
financial stress." [Tr. 1330] A GAF score of 50 was assigned
noting that plaintiff's highest GAF score in the previous year
had been 60.[4] Dr. Blatter stated that plaintiff has been treated

---

[4] GAF rates overall psychological functioning on a scale of 0-100
that takes into account psychological, social, and occupational
functioning. A GAF in the range of 51 to 60 indicates
"[m]oderate symptoms (e.g. flat affect and circumstantial
speech, occasional panic attacks) OR moderate difficulty in
social, occupational, or school functioning (e.g. few friends,
conflicts with peers or co-workers)." American Psychiatric
Ass'n, Diagnostic and Statistical Manual of Mental Disorders
(DSM-IV), at 34 (4th ed. Rev. 2000). The DSM-V, issued in 2013,
"no longer uses GAF scores as a diagnostic tool for assessing a
patient's functioning because of the questionably probative
value of such scores." Hagan v. Colvin, 52 F. Supp. 3d 167, 169
(D. Mass. 2014). However, the Social Security Administration has
issued an Administrative Memorandum indicating that "the SSA
will continue to receive and consider GAF scores just as it
would other opinion evidence, but scores must have supporting

with "[n]umerous antidepressant trials, antianxiety medication. Patient remains with residual severe depression and anxiety."[5] [Tr. 1330] With respect to clinical findings, Dr. Blatter stated that plaintiff continued to experience "low mood, tearfulness, anxiety, poor concentration, hopelessness, worthlessness, feelings of guilt, suicidal thoughts, anhedonia." [Tr. 1330] The report concludes: "Prognosis: Guarded." [Tr. 1330]

Dr. Blatter reported that plaintiff's symptoms included: anhedonia or pervasive loss of interest in almost all activities; appetite disturbance with weight change; decreased energy; thoughts of suicide; feelings of guilt or worthlessness; generalized persistent anxiety; mood disturbance; difficulty thinking or concentrating; recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress; persistent disturbances of mood or affect; apprehensive expectation; emotional withdrawal or isolation; emotional lability; sleep disturbance; and recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week. [Tr. 1331]

evidence to be given significant weight." Bourinot v. Colvin, 95 F. Supp. 3d 161, 178 (D. Mass. 2015).

[5] Medications included: Valium, Adderall, Zoloft, Wellbutrin, and Seroquel. [Tr. 1330]

With respect to work-related activities, Dr. Blatter opined that plaintiff had "no useful ability to function" and would be unable to complete a normal workday and workweek without interruptions from psychologically based symptoms; accept instructions and respond appropriately to criticism from supervisors; and deal with normal work stress. [Tr. 1332]  The doctor explained that plaintiff's "[d]epressive symptoms and severe anxiety are completely pervasive and crippling" and "are exacerbated by critical supervision as per his history and results can be devastating (suicidal behavior/psychiatric hospitalization)" and "even 'normal' work stress is intolerable." [Tr. 1332] Dr. Blatter also opined that plaintiff was "seriously limited, but not precluded" from remembering work-like procedures; making simple work-related decisions; performing at a consistent pace without an unreasonable number and length of rest periods; asking simple questions or requesting assistance; or responding appropriately to changes in a routine work setting. [Tr. 1332] Dr. Blatter found plaintiff's ability was "limited but satisfactory" to understand, remember and carry out very short and simple instructions; maintain attention for two hour segments; and sustain an ordinary routine without special supervision; and "unlimited or very good" at maintaining regular attendance and punctuality within customary,

usually strict tolerances; working in coordination with or
proximity to others without being unduly distracting them or
exhibiting behavioral extremes; and awareness of normal hazards
and taking appropriate precautions. [Tr. 1332] With respect to
mental abilities and aptitudes needed to perform semiskilled and
skilled work, Dr. Blatter opined that plaintiff had "no useful
ability to function" in dealing with the stress of semiskilled
and skilled work; was "seriously limited, but not precluded"
from understanding and remembering detailed instructions; and
was "limited but satisfactory" in setting realistic goals or
making plans independently of others. [Tr. 1333] The doctor
stated that he based his opinion on the limiting "[e]ffects of
depression, anxiety, and side effects of medication." [Tr. 1333]
With respect to mental abilities and aptitude needed to perform
particular types of jobs, Dr. Blatter opined that plaintiff's
ability was "limited but satisfactory" to maintain socially
appropriate behavior and "[a]dhere to basic standards of
neatness and cleanliness;" and "unlimited or very good" to
interact appropriately with the general public, travel in
unfamiliar places, and use public transportation. [Tr. 1333] Dr.
Blatter added that plaintiff "experiences attacks of severe
nausea and vomiting when under stress." [Tr. 1333] The doctor
found that plaintiff's psychiatric impairment would cause him to

be absent from work more than four days per month and was expected to last at least twelve months. [Tr. 1334] Dr. Blatter found no signs of malingering, finding that plaintiff's impairments were reasonably consistent with the symptoms and functional limitations described in the evaluation. [Tr. 1334]

The ALJ erred in her treatment of Dr. Blatter's opinion in several respects. First, the ALJ found that Dr. Blatter's opinions deserved "little evidentiary weight." [Tr. 184] ALJ Horton was required "to consider several factors in determining how much weight [the opinion] should receive." Burgess, 537 F.3d at 129 (citing 20 C.F.R. §404.1527(d)(2)); Greek, 802 F.3d at 375.

> In order to override the opinion of the treating physician, [the Second Circuit has] held that the ALJ must explicitly consider, inter alia: (1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.

Selian, 708 F.3d at 418 (citing Burgess, 537 F.3d at 129); see also 20 C.F.R. 404.1527(c)(2). Failure on the part of the ALJ to provide "'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." Burgess, 537 F.3d at 129-30 (quoting Snell, 177 F.3d at 133 (internal quotation marks omitted)); see also Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998) ("We hold that the Commissioner's

failure to provide 'good reasons' for apparently affording no
weight to the opinion of plaintiff's treating physician
constituted legal error.").

Here, the ALJ considered Dr. Blatter's three opinions. [Tr.
183]. In weighing the opinions of plaintiff's treating
psychiatrist, the ALJ stated:

> Although Dr. Blatter is a treating medical source, his
> opinion that the claimant cannot sustain even ordinary
> work pressures on a full-time basis is granted little
> evidentiary weight. His recent report that the
> claimant is crippled by his impairments is entirely
> inconsistent with the recent treatment record
> indicating that the claimant engages in a number of
> activities and exhibits few objective mental status
> abnormalities. Even Dr. Blatter indicated that the
> claimant was fully oriented with intact memory,
> concentration, and attention. His reports of severe
> anxiety with nausea are contradicted by claimant's
> reports that his anxiety was under good control with
> medication (Exhibit 29F). Overall, Dr. Blatter's
> findings of a complete inability to work are
> internally inconsistent and largely unsupported by
> treatment notes and objective mental status findings
> throughout the longitudinal treatment record. His
> medical opinion is granted little weight.

[Tr. 184] These few sentences are insufficient to qualify as a
"comprehensive[] set[ting] forth [of] reasons for the weight
assigned to a treating physician's opinion." Burgess, 537 F.3d
at 129 (quoting Halloran v. Barnhart, 362 F.3d 28, 33 (2004);
citing 20 C.F.R. § 404.1527(c)(2) (stating that the agency "will
always give good reasons in our notice of determination or
decision for the weight we give [the claimant's] treating

source's opinion")). As noted above, the Second Circuit has provided a list of factors that an ALJ must explicitly consider before discounting a treating physician's opinion. The ALJ did not explicitly consider the factors enumerated in the regulations and identified by the Circuit in weighing Dr. Blatter's opinions. See Selian, 708 F.3d at 418; 20 C.F.R. §416.927(c)(1)-(6). There is no mention of the frequency or duration of the treatment relationship, any medical evidence that does support Dr. Blatter's opinion, or his specialization.

Defendant argues that the ALJ's decision is sufficiently comprehensive because "the ALJ noted that these opinions came from plaintiff's treating psychiatrist, implicating the length, frequency, nature, and extent of the treatment relationship." [Doc. #18 at 5] Mere mention of the fact that an opinion comes from a treating psychiatrist is not a comprehensive explanation of the reasons for the assignment of weight and does not constitute explicit consideration of the required factors. Because it is not clear from the ALJ's opinion that she considered all of the factors enumerated in the regulations, the ALJ failed to give "good reasons" for according little weight, and remand is warranted to ensure that all of the enumerated factors were given appropriate consideration.

It is important to note that Dr. Blatter is the only treating psychiatrist; he is a specialist in the field of mental health; and he treated plaintiff on a weekly basis for approximately five years. See 20 C.F.R. §416.927(c)(1)-(6). Moreover, Dr. Blatter's opinions are consistent with much of the evidence of record, including his contemporaneous treatment notes. See 20 C.F.R. §416.927(c)(4). For example, treatment records consistently reference persistent severe depression and anxiety with various medication trials. [Tr. 530-36, 538-39, 542, 549, 557, 560, 564-65, 567, 571, 573-76, 578, 580-81, 584, 586-87, 594, 598, 600, 602, 608, 610, 617, 621, 624, 627-28, 632, 634-35, 640, 642-44, 646, 651-52, 654, 657, 659-60, 1272-74, 1276-77, 1284, 1288-89, 1291-92, 1294, 1299, 1303, 1309, 1311, 1313, 1316, 1318, 1320, 1322-23] Treatment notes also capture a longitudinal record of anxiety attacks with nausea and vomiting. [Tr. 538, 545, 565, 568-69, 576, 580, 584, 594, 598, 607-08, 627, 628, 633, 640, 644, 1273, 1276, 1277, 1283, 1307, 1311, 1318]

The ALJ is correct that some of the medical evidence appears to undermine Dr. Blatter's conclusions. However, "a reviewing court must consider the record as a whole, not seize upon 'a specific quantum' of evidence that, taken in isolation, might sustain the administrative decision." Grey v. Heckler, 721

F.2d 41, 46 (2d Cir. 1983) (citing <u>Day v. Weinberger</u>, 522 F.2d 1154, 1156 (9th Cir. 1975)). Plaintiff's ability to carry out a "number of activities" does not equate to the ability to perform substantial gainful activity. [Tr. 184]. <u>See</u> <u>Carrier-Titti v.</u> <u>Astrue</u>, No. 06CV0647(VEB), 2009 WL 1542553, at *10 (N.D.N.Y. June 1, 2009) ("[A] claimant's activities of daily living may not accurately reflect an ability to work day in and day out, for eight hours per day, five days per week. Performing simple daily activities, such as dusting, doing small loads of laundry, bathing and grooming one's self, and walking a dog for short distances, does not necessarily prove a claimant can perform regular work activity.") (citation omitted).[6]

---

[6] The Court is further compelled to acknowledge the references in the record to plaintiff's second suicide attempt in January 2013, less than two months after the ALJ's November 29, 2012, ruling. [Tr. 530, 531, 538, 586, 598, 617, 624, 627, 634, 640, 646, 651-52, 670, 1272, 1277, 1289, 1299, 1303, 1313, 1316, 1322] Plaintiff was admitted to Stamford Hospital on January 24, 2013, after writing suicide notes to his wife and Dr. Blatter and taking approximately 40 valium pills. [Tr. 110, 75] Plaintiff was treated at Stamford Hospital for a week and transferred to New York-Presbyterian Hospital ("NYP") for a three week in-patient admission, where he was assigned a GAF score of 21-30. [Tr. 75, 100, 112] During his in-patient stay, plaintiff received eight ECT treatments. [Tr. 100] Although the Court acknowledges these records, it bears noting that said records cannot form the basis upon which the Court rests its conclusion in light of the fact that these records (1) do not relate to the time period at issue, and (2) appear to reflect a post-decision deterioration of a pre-existing condition. <u>See</u> <u>Shrack v. Astrue</u>, 608 F. Supp. 2d 297, 302 (D. Conn. 2009) ("Evidence is material in this context if it is relevant to the

This matter is remanded to the Commissioner for further administrative proceedings consistent with this Ruling. On remand the Commissioner will address the other claims of error not discussed herein and the treatment records that post-date the ALJ's opinion that were provided to the Appeals Council. Finally, **the Court offers no opinion on whether the ALJ should or will find plaintiff disabled on remand**. Rather the Court finds remand is appropriate to permit the ALJ to reweigh the medical opinion evidence.

## VI.   CONCLUSION

For the reasons stated, plaintiff's Motion to Remand [**Doc. #15**] is **GRANTED**. Defendant's Motion for an Order Affirming the Decision of the Commissioner [**Doc. #18**] is **DENIED**.

The Clerk's Office is instructed that, if any party appeals to this Court the decision made after this remand, any subsequent social security appeal is to be assigned to the Magistrate Judge who issued the Ruling that remanded the case.

This is not a Recommended Ruling.  The parties consented to proceed before a United States Magistrate Judge [Doc. # 22] on

---

plaintiff's condition during the time period at issue and it is probable." (citing Tirado v. Bowen, 842 F.2d 595, 597 (2d Cir. 2008))); Bergmann v. Apfel, 207 F.3d 1065, 1069-70 (8th Cir. 2000) ("[T]o qualify as 'material,' the additional evidence must not merely detail after-acquired conditions or post-decision deterioration of a pre-existing condition." (collecting cases)).

November 30, 2015, with appeal to the Court of Appeals. Fed. R. Civ. P. 73(b)-(c).

SO ORDERED at New Haven, Connecticut this 5th day of January, 2016.

_____/s/_____
HON. SARAH A. L. MERRIAM
UNITED STATES MAGISTRATE JUDGE